UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEANNE E. TOSCANO,

                              Plaintiff,

                                                1:16-CV-0587
v.                                           (GTS/CFH)

PETSMART, INC.,

                              Defendant.

_____

APPEARANCES:                                 OF COUNSEL:

DeLORENZO, GRASSO & DALMATA, LLP       PAUL E. DeLORENZO, ESQ.
  Counsel for Plaintiff                      THOMAS E. DeLORENZO, ESQ.
The Lupe Building
670 Franklin Street, Suite 100
Schenectady, NY 12305

THE CHARTWELL LAW OFFICES, LLP         JOHN M. WUTZ, ESQ.
  Counsel for Defendant
1 Logan Square
130 North 18th Street, 26th Floor
Philadelphia, PA 19103

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

      Currently before the Court, in this negligence action filed by Jeanne E. Toscano

("Plaintiff") against PetSmart, Inc. ("Defendant"), is Defendant's motion for summary judgment.

(Dkt. No. 13.)  For the reasons set forth below, Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Claims

Generally, liberally construed, Plaintiff's Complaint alleges that on or about May 9, 2015, at Defendant's store at 241 Route 9 West in Glenmont, New York, Defendant (a citizen of Arizona) carelessly allowed urine to accumulate into a puddle and remain on the floor of an aisle, causing Plaintiff (a citizen of New York) to slip, fall and sustain permanent and painful personal injuries to her neck and back. (Dkt. No. 2 [Plf.'s Compl.].) Based on these factual allegations, Plaintiff asserts a state law tort claim of negligence against Defendant. (*Id.*) Further familiarity with this claim and the factual allegations supporting it in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.

### B.    Relevant Procedural History

Plaintiff originally filed this action in New York State Supreme Court, Schenectady County. On the same date on which it served its Answer to Plaintiff's Complaint, Defendant served a Notice to Admit pursuant to N.Y. C.P.L.R. § 3123, requesting Plaintiff to admit or deny the truth of the following statement: "Plaintiff seeks damages, if proven at trial, in excess of $75,000, exclusive of interest and costs." (Dkt. No. 1, Attach. 2 [Ex. C to Def.'s Notice of Removal].) Within twenty days thereafter, Plaintiff served a response, in which she admitted the aforementioned statement. (Dkt. No. 1, Attach. 3 [Ex. D to Def.'s Notice of Removal].)[1] Within

---

[1]    The Court finds that Plaintiff's Response to Defendant's Notice to Admit constitutes an "other paper" for purposes of 28 U.S.C. §§ 1446(b)(3) and (c)(3)(A). Moreover, the Court notes that, although initially it was inclined to question the plausibility of the conclusory admission by Plaintiff, the Court subsequently came across admissible record evidence that Plaintiff's alleged damages are indeed in excess of $75,000. (Dkt. No. 13, Attach. 6, at 15-16, 20 [attaching pages "52," "53," "54," "55," "56," "72" and "73" of Plf.'s Depo. Trans., where she testifies that she received chiropractic care, injections, and MRIs from multiple doctors and was subsequently diagnosed with protruding disks in her neck and back, as well as a torn labrum in her left hip requiring surgery.) As a result, the Court finds that Plaintiff has satisfied the amount-in-controversy requirement.

thirty days thereafter, Defendant filed its Notice of Removal in this Court.  (Dkt. No. 1.)

### C.    Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in its Statement of Material Facts and not denied with an appropriate record citation in matching numbered paragraphs by Plaintiff in her response thereto. (*Compare* Dkt. No. 13, Attach. 3 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 17 [Plf.'s Response Papers, containing no proper Rule 7.1 Response but merely a "Counterstatement of Facts"].)[2] The Court advises the parties, while it is under no duty to *sua sponte* scour the record for evidence to create a genuine dispute of material fact (and thus has not done so), the Court has not turned a blind eye to such evidence to the extent that it has appeared to the Court during the Court's review of the record to determine whether Defendant has met its threshold burden on its motion.  *See, infra,* Part II.A. of this Decision and Order.

1.     On May 9, 2015, Plaintiff visited the PetSmart located at 241 Route 9 West in Glenmont, New York, with her girlfriend, Victoria Treffeliti.

2.     Plaintiff and Ms. Treffeliti arrived at PetSmart sometime before 5:00 p.m. and walked down the center aisle of the store to the back of the store.

3.     Plaintiff left Ms. Treffeliti in the back of the store and turned around to go back up the center aisle towards the front of the store, where she turned right then walked down an aisle to look at dog supplies.  After looking through the dog supplies, Plaintiff returned to Ms. Treffeliti in the back of the store.

---

[2]    The Court notes that it construes Plaintiff's "Counterstatement of Facts" as the "set[ting] forth of any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs," as permitted by Local Rule 7.1(a)(3).  Local Rule 7.1(a)(3) does not contemplate a reply to such a Counterstatement (due to the futility of "denying" a question of fact that has already been found to be established by cited record evidence).

4.      Thereafter, on their walk towards the front of the store, Plaintiff turned right then walked down an aisle near the front of the store towards where dog beds were located, and slipped on urine.  (It does not appear that the aisle in which Plaintiff slipped is the same aisle down which she previously walked to get dog supplies.)  More specifically, in her deposition, Plaintiff testified as follows:

> Q:      After you and [Ms. Treffeliti] start walking back towards the front of the store, what happened next?
>
> A:      I cut over an aisle, I don't know which aisle it was. I'm not sure if it was the one with dog supplies. No. I cut over an aisle. I continued walking down the aisle, slipped on urine.
>
> Q:      . . . You're walking down the aisle towards the wall where the dog beds are.
>
> A:      Where the dog beds are.

5.      She did not actually fall to the ground after slipping; rather, her right foot went forward, her left foot went back and to the left, her neck went backwards, and then she caught herself.[3]

6.      The incident occurred sometime around 5:20 p.m.

7.      Before the incident, Plaintiff had seen a little dog in the store but had not observed any water, liquid, or other debris on the floor.  More specifically, Plaintiff testified as follows:

> Q:      When you're walking through the store, did you see any dogs in the store?
>
> A:      Yes.

---

[3]      (Dkt. No. 13, Attach. 6, at 26-27 [attaching pages "97" and "98" of Plf.'s Depo. Trans.].)

Q:    How many dogs did you see?

A:    Just one.

Q:    Where did you see that dog?

A:    That was when I first walked in. We walked to the back of the
       store. The cat litter's to the right. She was to the left.

. . .

Q:    During that ten to 15 minutes you're looking for stuff for [your
       dog], did you observe any water, liquid or other debris on the
       ground?

A:    No.

8.    Plaintiff was looking down at the ground while walking towards the dog beds and

did not see anything in front of her on the ground.  More specifically, Plaintiff testified as

follows:

Q:    At any point when you're walking down that aisle towards the dog
       beds, do you look down at the ground in front [of] you?

A:    Yes.

Q:    When you looked at the ground in front of you, did you see
       anything?

A:    No.

. . .

Q:    So how many feet before your fall did you look down at the
       ground in front of you?

A:    Probably the whole aisle . . . .

9.    The urine was difficult to see even though Plaintiff was looking at the ground

because "the aisle was so clear" and "to the naked eye with that glare of the urine it was very

difficult" to see.

10.    The puddle was approximately twelve inches (12") in diameter with a "little yellowish tint."

11.    Plaintiff does not know where the puddle came from, nor how long it was on the floor before the incident.

12.    Before the incident, Plaintiff did not see a wet substance on the floor.

13.    After the incident, Plaintiff did not see any footprints or shopping cart marks leading away from or through the puddle, nor did she see any dirt or debris in the puddle.

14.    Plaintiff does not know if the urine had been caused to be there by the little dog that she had observed in the store.

15.    According to Plaintiff, there was nothing about the substance that gave her any indication of how long it had been there before the incident.

16.    Plaintiff never discovered from any subsequent source how the substance had come to be on the floor or how long it had been on the floor before the incident.

17.    Plaintiff has no evidence that a PetSmart employee caused the puddle to be on the floor**.**

18.    After the incident, Plaintiff proceeded to the dog beds and picked one out, then reported the incident to an employee.  Plaintiff was helped by employees of PetSmart and she denied medical care at that time.

19.    Plaintiff was not informed by any employee of PetSmart where the substance had come from or how long it had been on the floor before the incident.

20.    After the incident, Plaintiff was helped by the assistant store leader, Mark DeForge, a member of the store's safety team.

21.     One of Mr. DeForge's duties as a manager of the store was to "walk the floor" each day at 9:00 a.m., 1:00 p.m., 5:00 p.m., and 9:00 p.m.  The walk took managers around "every part" of the store.  (Among the things done, during the walk-through, is to look for debris, urine or anything else on the floor of the aisles.)[4]

22.     If Mr. DeForge found a safety concern during the walk-through, he would take care of the issue on the spot, personally if he could.

23.     Mr. DeForge likely performed the 5:00 p.m. walk-through on the date in question, but it could have been performed by another manager.  (The other managers on the date and time in question were Ms. Chris Sleurs and Ms. Brandi Couse.)[5]

24.     All of the areas of the store are surveyed when a manager properly walks the floor because managers are trained to observe every area of the store during their walk-throughs.

25.     According to Mr. DeForge, it is "theoretically impossible" that no manager inspected the area of the fall between 1:00 p.m. and 5:00 p.m. on the day in question.

### D.     Parties' Briefing of Defendant's Motion

#### 1.     Defendant's Memorandum of Law

Generally, in support of its motion for summary judgment, Defendant argues as follows: (1) under the circumstances of this diversity action, New York law governs Plaintiff's claim of negligence; (2) under New York law, for a plaintiff to establish a prima facie case of negligence against a property owner arising from a slip-and-fall accident, the plaintiff must demonstrate (a)

---

[4]     (Dkt. No. 13, Attach. 7, at 21, 23, 24, 82 [attaching pages "20," "22," "23" and "81" of DeForge Depo. Tr.].)

[5]     (Dkt. No. 13, Attach. 7, at 29, 42, 40, 66, 68, 86, and 88 [attaching pages "28," "41," "49," "65," "67," "85," and "87" of DeForge Depo. Tr.].)

that the defendant created the condition that caused the accident, (b) that the defendant had actual knowledge of the condition, or (c) that the defendant had constructive notice of the condition; (3) applying that law to the facts of this case, Defendant is entitled to summary judgment, because there is no admissible record evidence that Defendant created the condition that allegedly caused the fall; (4) similarly, there is no admissible record evidence that Defendant had actual knowledge of the condition that allegedly caused the fall; and (5) finally, there is no admissible record evidence that Defendant had constructive notice of the condition that allegedly caused the fall.  (*See generally* Dkt. No. 13, Attach. 2 [Def.'s Memo. of Law].)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in Plaintiff's response to Defendant's motion for summary judgment, she argues as follows: (1) under New York law, in a slip-and-fall case brought by a plaintiff against a commercial establishment, when a defendant is moving for summary judgment, the defendant has the initial burden of showing a lack of constructive notice of the dangerous condition for a sufficient length of time to discover and remedy it through the exercise of reasonable care; (2) here, Defendant has failed to meet that initial burden, because the record does not contain sufficient evidence to establish such lack of constructive notice (e.g., testimony that the floor had been inspected at 5:00 p.m. on the day in question); (3) in any event, even if Defendant has met its initial burden, Plaintiff has established that Defendant had constructive notice of the urine on the ground because it is a reoccurring incident for Defendant; and (4) Plaintiff has established that Defendant had constructive notice of the urine on the ground for the alternative reason that (a) evidence exists that the puddle was "large," (b) evidence exists that a store manager other than Mr. DeForge walked the floor at 5:00 p.m. (and thus had sufficient time to clean up the

puddle but failed to do so), (c) Defendant failed to take photographs of the puddle after the

incident, and (d) evidence exists that no dog big enough to make the puddle was in the store after

4:00 p.m.  (*See generally* Dkt. No. 16 [Plf.'s Opp'n Memo. of Law].)

### 3. Defendant's Reply Memorandum of Law

Generally in its reply, Defendant argues as follows: (1) each of the facts asserted in

Defendant's Statement of Material Facts must be deemed admitted by Plaintiff under Local Rule

7.1(a)(3) because Defendant properly asserted and supported those facts in its 31-paragraph

Statement of Material Facts, and Plaintiff did not properly deny those facts (or support any such

denials) in its 13-paragraph "Counterstatement of Facts"; (2) even if the Court were to look past

the aforementioned failure by Plaintiff, the Court should not treat Plaintiff's "Counterstatement

of Facts" as a response to Defendant's Statement of Material Facts, because that

"Counterstatement of Facts" cites documents that are not included in the record under Local

Rule 7.1(a)(3), specifically, unverified and unauthenticated statements from three individual

employees who were not deposed in this case; (3) in any event, contrary to Plaintiff's argument,

Defendant has clearly met its initial burden of showing a lack of constructive notice of the

dangerous condition for a sufficient length of time to discover and remedy it through the exercise

of reasonable care (i.e., evidence that one of the managers on duty walked the floor at 5:00 p.m.

on the day in question and did not observe such a puddle); (4) moreover, even if the puddle in

question was a reoccurring incident for Defendant, the aforementioned evidence establishes that

Defendant did not, in fact, have notice of the puddle; and (5) finally, the evidence cited by

Plaintiff does not establish that the puddle was there for a sufficient period of time to have been

noticed and remedied by Defendant because (a) the puddle was only twelve inches in diameter

(and indeed was missed by Plaintiff herself despite the fact that she had been looking down at the ground before the accident), (b) the evidence establishes that it was likely Mr. DeForge who walked the floor at 5:00 p.m. (and, any event, any of the managers would have cleaned up the puddle if they had seen it), (c) the failure to take photographs of the puddle was innocent and is immaterial given the other record evidence, and (d) there is no evidence to establish that no dog big enough to make the puddle was in the store after 4:00 p.m.  (*See generally* Dkt. No. 19 [Def.'s Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[6]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the

---

[6]    As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[7] Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[8]

---

[7]    *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[8]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[9]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

**B.    Legal Standard Governing Plaintiff's Claim**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standard governing Plaintiff's negligence claim, the Court will not recite, in its entirety, that legal standard in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See*

---

movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[9]    *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

*generally* Dkt. No. 13, Attach. 2, at 15-22 [attaching pages "10" through "17" of Def.'s Memo. of Law]; Dkt. No. 16, at 2-11 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 19, at 5-10 [Def.'s Opp'n Memo. of Law].)

### III.    ANALYSIS

After carefully considering the matter, the Court grants Defendant's motion for the reasons stated in its memoranda of law. *See, supra,* Part I.D. of this Decision and Order. To those reasons, the Court adds the following analysis.

The parties do not dispute that New York law governs Plaintiff's negligence claim. Nor do the parties dispute that Defendant did not have actual notice of the puddle. As a result, the Court's analysis centers on the issue of constructive notice. "To prove liability based on constructive notice, the danger must have been visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [the defendant] to discover and remedy it." *Nussbaum v. Metro-North Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015). "This requires the plaintiff to present proof of the length of time the condition existed prior to the alleged fall." *Quarles v. Columbia Sussex Corp.*, 997 F. Supp. 327, 332 (E.D.N.Y. 1998).

"[I]n cases where the plaintiff is unable to establish how long the condition causing the accident existed prior to the accident, courts have entered summary judgment in favor of the defendant." *Stephanides v. BJ's Wholesale Club, Inc.*, 12-CV-0083, 2013 WL 1694901, at *15 (E.D.N.Y. Apr. 17, 2013); *see, e.g., Gordon v. Am. Museum of Nat. History*, 67 N.Y.2d 836, 837 (1986) (holding that the case should not have gone to the jury where there was no evidence that anyone, including plaintiff, had seen the piece of paper on which plaintiff slipped prior to the accident, or any evidence to indicate whether the paper had been there for some time).

In this case, Plaintiff has offered no evidence to establish how long the puddle existed on the ground before her slip.  For example, as Plaintiff acknowledged in her deposition, there were no footprints, shopping cart marks, debris, dirt, or other evidence suggesting that the puddle had been there for a significant length of time.  *See, supra,* Statement of Fact No. 13.  Moreover, Defendant has sufficiently established that one of the store's three managers on duty at the time in question performed a walk-through of the store at 5:00 p.m. and did not see a puddle.  *See, supra,* Statement of Fact Nos. 21, 23.

In support of her argument that evidence exists that a store manager other than Mr. DeForge walked the floor at 5:00 p.m. (and thus had sufficient time to clean up the puddle but failed to do so), Plaintiff relies on, *inter alia*, Mr. DeForge's admission that he was not in the area where the puddle was located during the hour between 4:20 p.m. and 5:20 p.m. on the day of the incident.  (Dkt. No. 17, at ¶ 6 [Plf.'s "Counterstatement of Facts"].)  Specifically, Mr. DeForge's Associate Statement Form dated June 10, 2014, reads, "I was not in the specific location (near the dog beds and back endcaps 28/29) between 4:20 and 5:20pm."  (Dkt. No. 16, Attach. 4.)  However, during his subsequent deposition, Mr. DeForge clarified that, by the term "specific," he meant merely that he was not physically present at the exact site of the puddle doing any kind of "dedicated work," not that he did not likely perform the 5:00 p.m. walk-through.  (Dkt. No. 13, Attach. 7, at 56-59 [attaching pages "55," "56," "57" and "58" of DeForge's Depo. Tr.].)[10]  Moreover, even if Mr. DeForge did not in fact perform a proper walk-

---

[10]        While a party may not create a genuine dispute of material fact by submitting an affidavit that contradicts the affiant's prior deposition testimony, *see Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."), no rule prohibits a party from explaining a statement

through at 5:00 p.m., again, he has adduced admissible evidence that one of his two fellow managers did so. *See, e.g., supra,* Statement of Fact Nos. 21, 23.[11]

Because of the significance of this evidence in the Court's analysis, some further clarification is warranted regarding precisely what evidence is, and what evidence is not, relied upon by the Court in finding that Defendant has met its burden of establishing that a proper walk-through of the area of the store in question was performed by a manager at 5:00 p.m. on May 9, 2015.

Under the circumstances, the Court cannot, and does not, rely on a written log recording the fact that a manager performed a proper walk-through at 5:00 p.m. on May 9, 2015. Granted, Mr. DeForge testified that, as a general matter, such a written "log" exists or existed. (Dkt. No. 13, Attach. 7, at 18-19, 23, 28-30 [attaching pages "17," "18," "22," "27," "28," "29," and "30" of DeForge Depo. Tr.].) Mr. DeForge also testified that, after such a log is completed, then, pursuant to the policy in place at the time, it is sent to the "home office" (non-electronically) and/or kept for a period of time and then shredded pursuant to a document-retention policy. (Dkt. No. 13, Attach. 7, at 18-19, 23, 29-30 [attaching pages "28" and "29" of DeForge Depo.

in an affidavit (such as "exact location") through subsequent deposition testimony.

[11]    The Court notes that it also rejects as unpersuasive Plaintiff's argument that a genuine dispute of material fact exists because Mr. DeForge "failed to follow [PetSmart's] incident reporting procedures" by permitting an employee to clean up the puddle before photographs of the puddle. (Dkt. No. 17, at 7 [Plf.'s Opp'n Memo. of Law].) Plaintiff has not moved for either preclusion of evidence or the drawing of an adverse inference due to a claim of spoliation. Even if she had, the Court would be unable to find the requisite bad faith conduct. Moreover, a failure to take photographs after an incident has nothing to do with whether Defendant's managers had a routine practice of walking through the store in question at, *inter alia,* 5:00 p.m. Finally, the Court rejects Plaintiff's arguments regarding the "large[ness]" of the puddle and the "large[ness]" of the dog who presumably made it for the reasons offered by Defendant.

Tr.].)  However, neither party has adduced the log.  (*See generally* Dkt. Nos. 13, 16, 19.)

Moreover, Mr. DeForge never testified that he saw the log in question and that it indicated that a

proper walk-through had been performed by one of the managers at 5:00 p.m. on May 9, 2015.

(*See generally* Dkt. No. 13, Attach. 17.)

Nor does the Court rely on Mr. DeForge's memory of doing the walk-through himself:

Mr. DeForge does not recall performing the walk-through at 5:00 p.m. on May 9, 2015.  (Dkt.

No. 13, Attach. 7, at 29 [attaching page "28" of DeForge Depo. Tr.].)  Nor does the Court rely on

the testimony of either of the two other managers who could have performed the walk-through at

at 5:00 p.m. on May 9, 2015: neither party has adduced the testimony of either Ms. Sleurs or Ms.

Couse on the subject.  (*See generally* Dkt. Nos. 13, 16, 19.)

Rather, in finding that Defendant has sufficiently established that a proper walk-through

of the area in question was performed at 5:00 p.m. on May 9, 2015, by one of the three managers

at duty at the time in question (i.e., Mr. DeForge, Ms. Sleurs or Ms. Couse), the Court relies on

Mr. DeForge's testimony that (1) a proper walk-through includes inspecting the entire store and

remedying any issues "on the spot" (either himself or through use of a handheld phone) in order

to complete a "checklist," (2) such a proper walk-through is one of the "duties" of the managers,

(3) a proper walk-through is what managers are "trained to do," and (4) indeed managers are

required to "prove [in a log that] we're going around the store" at, *inter alia*, 5:00 p.m.  (Dkt.

No. 13, Attach. 7, at 17-19, 23-24, 29, 57, 59, 66-68, 81-88, 93 [attaching pages "16," "17,"

"22," "23," "28," "56," "58," "65," "66," "67," "80," "81," "82," "83," "84," "85," "86," "87,"

and "93" of DeForge Depo. Tr.].)

"Evidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the  . . . routine practice." Fed. R. Evid. 406.  This "routine practice" of an organization has been characterized as behavior that is "[e]quivalent" to a habit, which describes one's "regular response to a repeated specific situation."  Fed. R. Evid. 406 advisory committee's note to 1972 proposed rule.

Here, the Court finds that the requirement of having a manager conduct proper walk-throughs at specified times (including 5:00 p.m. on May 9, 2015) at the store in question qualifies as an organization's routine practice.  *See, e.g.*, *Robinson v. Kroger Co.*, 13-CV-0605, 2014 WL 3405874, at *1, 4, n.3 (S.D. Ind. July 10, 2014) (finding that a store employee's testimony regarding her typical routine of walking a "last loop around the floor of the Produce Department to make certain that there was nothing on the floor that should not be there" and "to clean up any spills she discovered," which she "performed on each occasion that [she] worked as a Kroger Produce Clerk," constituted admissible Fed. R. Evid. 406 evidence in a slip-and-fall action).

For all of these reasons, the Court grants Defendant's motion for summary judgment.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 2) is **DISMISSED.**

Dated: February 9, 2018
            Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge